### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CASE NO. 14-CV-00411-JES-CM

WILLIAM J. SCHOEN,

       Plaintiff,

vs.

HEALTH MANAGEMENT ASSOCIATES,
INC.,

       Defendant.

### DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendant HEALTH MANAGEMENT ASSOCIATES, INC. ("HMAI") moves, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the amended complaint (D.E. 20) filed by Plaintiff WILLIAM J. SCHOEN ("Schoen"). Following HMAI's motion to dismiss Schoen's original complaint (D.E. 11), Schoen revised his pleading to characterize his claim for retirement benefits as an ERISA claim (although he still fails to exhaust the necessary administrative remedies) and added a claim for quantum meruit which all but acknowledges that his breach of contract theory has serious problems. For the reasons detailed below, Schoen's amended complaint should be dismissed in its entirety.

### INTRODUCTION

Thirteen years ago, in 2001, William Schoen secured for himself a written employment agreement (the "Employment Agreement") with HMAI, the publicly-traded hospital company he had long managed as Chief Executive Officer. (D.E. 20 ¶¶ 13-14.) Around that time, Schoen stepped down as CEO at age 66. (D.E. 20 ¶ 13.) The Employment Agreement provided Schoen

with generous executive benefits, including the following perks relevant to this dispute: (i) the use of HMAI's corporate jets for personal use – up to 150 hours annually – during Schoen's employment and for fifteen years thereafter; and (ii) retirement benefits under HMAI's supplemental employment retirement plan ("SERP") in the amount of $1,000,000.00 a year paid to Schoen during his lifetime **and** to Schoen's wife for another ten years following his passing. (D.E. 20 ¶¶ 39, 55, 65)

The Employment Agreement, by its express terms, expired on January 1, 2004.  (D.E. 20 Ex. A ¶ 2.)  Schoen continued to serve as the chairman of HMAI's board of directors until 2013, when HMAI's shareholders voted to oust the entire board.  (D.E. 20 ¶ 15.)

Despite having received many millions of dollars in compensation from HMAI, Schoen now claims that HMAI owes him much more.  Following removal of the action to this Court and HMAI's prior motion to dismiss, (D.E. 11), Schoen elected to file an amended complaint alleging that: (1) HMAI breached the 2001 Employment Agreement by not paying him employee severance in 2013, and by not cashing out his unused corporate jet hours; (2) HMAI breached the SERP by underpaying Schoen's retirement benefits after Schoen requested (and received) a multi-million dollar lump-sum payment in 2014; (3) Schoen purportedly doubts his medical coverage under the Employment Agreement and asks that the Court clarify those rights through a declaratory judgment; and (4) Schoen and HMAI had an implied contract that mirrored the terms of Schoen's Employment Agreement.

For the reasons set forth below, Schoen's complaint is improper, fails to state a claim upon which relief can be granted, and should be dismissed under Rule 12(b)(6).

**ARGUMENT**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). This requires allegations of concrete facts from the beginning, see Ashcroft v. Iqbal, 556 U.S. 662 (2009), and not "labels…conclusions, [or] a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555.

Here, Schoen's amended complaint falls far short of stating a plausible claim. Specifically, the amended complaint should be dismissed for four reasons: (1) Schoen's breach of contract claim is preempted by ERISA and implausible on its face; (2) Schoen's ERISA claim is barred because he failed to exhaust his administrative remedies; (3) Schoen's declaratory judgment claim is unnecessary; and (4) Schoen's quantum meruit claim is legally improper.

1.   **SCHOEN'S BREACH OF CONTRACT CLAIM IS PREEMPTED BY FEDERAL LAW AND, EVEN UNDER STATE LAW, IS IMPLAUSIBLE ON ITS FACE.**

   *a.    The breach of contract claim is preempted by ERISA.*

Because the contract Schoen seeks to enforce invokes and relates to an ERISA plan, Count I is preempted.

By enacting the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), Congress sought to create a consistent and comprehensive nationwide framework for regulating employee benefit plans. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 44 (1987), abrogated in part on other grounds by Ky. Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329 (2003).   Consistent with this comprehensive legislative scheme, ERISA imposes two broad forms of federal preemption: (1) complete preemption, which provides federal courts with jurisdiction; and (2) conflict preemption, which is a substantive defense to state law claims. See Connecticut State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1344 (11th Cir.

2009).  ERISA's conflict preemption provision, section 514(a), expressly provides that ERISA shall "supersede any and all State laws insofar as they may now or hereafter **relate to** any employee benefits plan."  29 U.S.C. § 1144(a) (emphasis provided).  Conflict preemption under section 514(a) **requires dismissal** of state law claims that "relate to an ERISA plan."  Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1212, 1215 (11th Cir. 1999); Jones v. LMR Intern., Inc., 457 F.3d 1174, 1179 (11th Cir. 2006).

A state law claim "relates to" an ERISA plan "if it has a connection with or reference to such a plan."  Pilot Life, 481 U.S. at 47-48.  More specifically, the Eleventh Circuit has held that a state law claim "relates to" an ERISA plan "whenever the alleged conduct at issue is intertwined with the refusal to pay benefits."  Garren v. John Hancock Mut. Life Ins. Co., 114 F.3d 186, 187 (11th Cir. 1997) (citation omitted).  State law claims such as these – including breach of contract claims – are routinely dismissed as preempted.  See Jones, 457 F.3d at 1179 (affirming the dismissal of state law claims because they related to an ERISA plan); Butero, 174 F.3d at 1215 (affirming dismissal of contract claim in removed state court action); Willson v. Blue Cross/Blue Shield, No. 8:11-CV-59-T-33EAJ, 2011 WL 5826583, at *2 (M.D. Fla. Nov. 18, 2011) ("It is well established that each of Plaintiffs' causes of action [which included breach of contract related to plan benefits] is preempted by ERISA.").

Schoen's breach of contract claim relates to the SERP in several ways.  The contract at issue in Count I, Schoen's Employment Agreement, expressly mentions the SERP[1] and purports to raise Schoen's benefits thereunder:

---

[1] By amending his complaint to assert an ERISA claim, Schoen has acknowledged that the SERP is governed by ERISA.  Indeed, the SERP states that it is "intended to constitute a top-hat plan under Sections 201(2), 30l(a)(3), and 401(a)(l) of the Employee Retirement Income Security Act of 1974, as amended."  (D.E. 20 at 94.)  A top-hat plan is an employee-benefits plan "which is unfunded and is maintained by an employer primarily for the purpose of providing deferred

> SERP.   The annual retirement benefit to which the Executive shall be entitled during his life under the Company's Supplemental Executive Retirement Plan shall be increased as of the Effective Date to $1,000,000.   In the event the Executive's spouse survives him, she will continue to be [sic] receive the same annual retirement amount for her life (but in no event for more than ten (10) years after the Executive's death).

(D.E. 20 Ex. A ¶ 6.)   Schoen also alleges, in Count I, that HMAI abided by the Employment Agreement by providing him with an "increase in retirement benefits," (D.E. 20 ¶ 16) – in other words, benefits under the SERP.   Schoen mentions this in an effort to demonstrate that the Employment Agreement did not expire by its terms on January 1, 2004.[2]   In addition, the severance payment that Schoen seeks in Count I is calculated based on the income Schoen received from HMAI the prior three calendar years (D.E. 20 ¶ 33) – which includes Schoen's annual $1 million payment under the SERP.   In other words, Schoen's damages in Court I would be predicated on the benefits provided under an ERISA plan.   Count I's explicit reference to and reliance on the SERP means that the claim has "a connection with or reference to" an ERISA plan, and is therefore preempted.   See Pilot Life, 481 U.S. at 47-48; Dranchak v. Akzo Nobel Inc., 88 F.3d 457, 459 (7th Cir. 1996) (concluding § 514(a) preempts breach of contract claim because the alleged contract promised the plaintiff extra pension credits and the continuation of health benefits under the firm's welfare plan).

The Seventh Circuit's decision in Dranchak is instructive.   There, an executive sued his former employer for breach of three employment-related contracts.   88 F.3d at 459.   The contracts called for the executive to receive, among other things, increased retirement benefits under the company's pension plan, extended medical coverage, and other perks.   Id.   Hoping to

---

compensation for a select group of management or highly compensated employees," and such plans "are subject to ERISA…."   Holloman v. Mail-Well Corp., 443 F.3d 832, 837 (11th Cir. 2006) (citing 29 U.S.C. § 1003(a)).

[2] As discussed below, however, this effort is unavailing.

avoid ERISA preemption, the executive argued that the contracts did not affect the company's plans because they did not set any plan's level of benefits or rules for payment.  Id.  The district court nevertheless found that the breach of contract claims were preempted under ERISA.  Id.

The Seventh Circuit agreed.  Noting that "[n]ot only pension and welfare plans, but also **contracts specifying levels of pension and welfare benefits**, fall into the domain of federal law," the Court found that the contracts at issue "instruct the plan's administrator how much to disburse to [executive] from the pension and welfare trusts" and therefore were "related to" those plans.  Id. (emphasis provided).  Regarding the portions of the contracts that *did not* involve the plans, the Court explained that these other provisions also are governed by federal law:

> Portions of the letter agreements that promise the continuation of wages, favorable recommendations, and so on, cannot sensibly be divorced from the portions that deal with pension and welfare benefits; if one portion is valid…everything is valid.  The letter agreements affect ERISA plans, state law enforcing the letter agreements would relate to the plans, and the promises they contain therefore must stand or fall together under federal common law.

Id. at 459-60.

The same reasoning applies here.  Because Schoen's Employment Agreement purports to set the level of retirement benefits paid to him under the SERP, (D.E. Ex. A ¶ 6), it relates to an ERISA plan.  The other portions of the agreement – for example, the airplane benefit provision – "cannot sensibly be divorced" from the ERISA-related portion.  Count I, which claims to enforce the Employment Agreement, is therefore preempted by ERISA.

        *b.*      *Schoen's breach of contract theory is implausible on its face.*

        *i.*      *Severance Payment*

In Count I, Schoen first alleges that HMAI breached the Employment Agreement by failing to pay him severance of over three million dollars because, according to Schoen, HMAI terminated his employment in August 2013 without cause.  (D.E. 20 ¶¶ 33-38; D.E. 20 Ex. E at

2.)  This claim fails because, by its own express terms, the Employment Agreement expired over 10 years ago – and along with it, any obligation to pay severance.  The Employment Agreement states in unambiguous language:

> <u>Term</u>.  The term of employment of the Executive under this Agreement ("Employment Term") shall commence as of the· Effective Date and, unless sooner terminated pursuant to Paragraph 10 hereof, shall continue until **January 1, 2004** ("Expiration Date").

(D.E. 20 Ex. A ¶ 2) (emphasis provided).

"Where a document on which the pleader relies in the complaint directly conflicts with the allegations of the complaint, the variance is fatal and the complaint is subject to dismissal for failure to state a cause of action."  <u>Appel v. Lexington Ins. Co.</u>, 29 So. 3d 377, 379 (Fla. 5th DCA 2010); <u>Geico General Ins. Co., Inc. v. Graci</u>, 849 So. 2d 1196, 1199 (Fla. 4th DCA 2003) ("When there are conflicts between the allegations and documents attached as exhibits, the plain language of the documents control.").

Here, given the conflict between Schoen's allegations and the Employment Agreement's unambiguous language, the Court's analysis of this severance claim can begin and end with the expiration provision.  Because the Employment Agreement expired in 2004, HMAI was under no obligation to tender a severance payment to Schoen when he resigned, or was removed, as chairman of the board almost a decade later.

In an attempt to avoid this fate, Schoen goes to great lengths to argue that the Employment Agreement somehow remained in effect, either through subsequent writings (D.E. 20 Ex. C) or through the parties' conduct (e.g., by Schoen's continued role as a director on HMAI's board).  (D.E. 20 ¶¶ 15-19.)[3]  But neither attempt can save Schoen's severance claim.

---

[3] For the first time, Schoen now makes vague references to "yearly renewals" of Schoen's Employment Agreement, (D.E. 20 ¶ 20), which suggests that the parties mutually and expressly

Regarding the subsequent writings, neither document offered by Schoen purports to extend the term of the Employment Agreement or to impose a new severance obligation.  The first such writing, a 2007 letter (not even a contract) from the chairman of HMAI's compensation committee to HMAI's general counsel, acknowledged that HMAI would be increasing Schoen's medical benefits under HMAI's medical plans, but did not restate the other terms of the Employment Agreement or attempt to extend its expiration date (or purport to have any legal effect whatsoever).  (D.E. 20 Ex. C at 2.)  Similarly, the second writing amended only one paragraph of the Employment Agreement: paragraph 7, which related to Schoen's benefits under HMAI's medical plans.[4]  (D.E. 20 Ex. C at 3.)  This amendment does not extend Schoen's employment term or renew or restate the many other terms of the Employment Agreement.  It simply amended a discrete provision of Schoen's Employment Agreement that was intended to extend past Schoen's termination and thus was subject to amendment.  The severance obligation, however, ended when the Employment Agreement expired in 2004.

Schoen's reliance on the parties' subsequent conduct is likewise unavailing.  Schoen repeatedly suggests that HMAI, through its conduct, "reaffirmed" or acted as if the Employment

---

assented to this renewal arrangement.  Because Schoen offers no writing that supports such a renewal, this mutual and express assent (under Schoen's new theory) must have been oral.  However, orally renewing or extending a contract still requires the basic contract elements of offer, acceptance, and consideration, and such allegations are conspicuously absent from the amended complaint.  Thus, to the extent Schoen now maintains that his Employment Agreement was renewed yearly following its expiration in 2004, his allegations are not adequately pled.

[4] Once again, Schoen takes the untoward step of characterizing the First Amendment to the Employment Agreement (Exhibit C) as the "**Reaffirmation** and Amendment to the Employment Agreement" and even capitalizing "Reaffirmation" so as to give this Court the impression that this was the document's title.  (D.E. 20 ¶ 17; D.E. 20 at 24 [Index]) (emphasis provided).  The First Amendment, however, says (and did) no such thing.  Its full title is "First Amendment to Employment Agreement between Health Management Associates, Inc. and William J. Schoen" and it does not so much as mention "reaffirming."  (D.E. 20 Ex. C at 3.)

Agreement remained in place and that, as a result, the terms of the Employment Agreement "continued beyond the date of January 1, 2004 and until [Schoen's] termination and removal from the Board of Directors."  (D.E. 20 ¶ 18.)  But Florida's statute of frauds, section 725.01, Florida Statutes, requires that parties renew such an agreement in writing.[5]  See Gray v. Prime Management Group, Inc., 912 So. 2d 711, 712-13 (Fla. 4th DCA 2005); Sanz v. R.T. Aerospace Corp., 650 So. 2d 1057, 1059 (Fla. 3d DCA 1995); see also Silverman Wender Koonin Epstein Garcia & Rosencwaig, P.A. v. Dennis, 937 So. 2d 1221, 1222 (Fla. 3d DCA 2006) (holding that an arbitration provision in a two-year employment contract was unenforceable following the contract's expiration, even if employee continued to work for company after the contract expired and even if "the parties continued to govern themselves according to the agreement's terms after it expired").

In Gray, a company sued a former executive for breaching a non-competition provision contained in his employment agreement.  912 So. 2d at 712.  That agreement, by its terms, lasted for five years, but following the expiration date, the parties continued to perform as if the agreement remained in place.  Id. at 712-13.  When the executive left and began competing, the company sued on the non-compete, alleging that the parties, through their conduct, had tacitly assented to a new contract containing the same provisions as the old, expired one.  Id. at 713. The trial court agreed and enjoined the executive from continuing his competitive activities.  Id.

The Fourth District reversed.  Because the agreement could not be performed within one year (it contained a five-year term), the Court found that the statute of frauds required the parties to renew their agreement in writing; continued performance after the agreement's expiration

---

[5] Although the statute of frauds is an affirmative defense normally presented in an answer, when the facts giving rise to the defense are apparent on the face of the complaint, the defense is properly raised on a motion to dismiss.  Fortner v. Thomas, 983 F.2d 1024, 1028 (11th Cir. 1993).

would not suffice.  Id.  The Court recognized a line of authority that stood for the proposition that where an employment agreement expires by its own terms, and the parties continue to perform as before, an implication arises that they have mutually assented to a new contract containing the same terms as the old.  Id.  However, the Fourth District found that those cases were inapplicable because they involved the enforcement of one-year employment agreements, which exempted those agreements from the statute of frauds.  Id.  Because the contract in Gray could not be performed within one year, the contract had expired and the provision at issue was unenforceable.  Id.

The same result should occur here.  The parties' subsequent conduct (as alleged) cannot breathe life into an otherwise expired Employment Agreement (which, given its express three year term, could not be performed within one year).  Because Schoen does not properly allege that the parties renewed the Agreement – and, in particular the severance provision – his claim is barred under the statute of frauds and should be dismissed at the threshold.

Schoen also references HMAI's filings with the Securities and Exchange Commission, ostensibly in an effort to demonstrate that the entire Employment Agreement – including the severance provision – remained in effect through 2013.  This point misses the mark badly for two reasons.  First, listing Schoen's Employment Agreement as a "Material Contract" does not at all reflect that the Agreement was "renewed" such that the severance provision remained in effect.  To the contrary, such filings demonstrate only that certain discrete obligations contained in the Employment Agreement were intended to extend beyond the expiration date and thus remained enforceable – which HMAI does not dispute.  But these post-expiration obligations (e.g., SERP benefits, medical insurance, aircraft benefits) are clearly and expressly indicated in

the Employment Agreement.  The severance provision, on the other hand, included no such extension.

Second, far from supporting Schoen's claim, HMAI's SEC filings actually do the opposite – they confirm that Schoen's Employment Agreement expired and that only *certain provisions* remain effective.  For example, HMAI's Proxy Statement dated April 13, 2007, states that "Mr. Schoen **previously** provided services to us under an employment agreement dated January 2, 2001" and that "**[c]ertain terms of such agreement continue to be in effect**," such as those related to aircraft benefits and health care coverage.  (HMAI Proxy Statement (Schedule 14A), April 13, 2007, at 43) (emphasis provided).[6]  Notably, the severance provision is not mentioned as one of the obligations that "continue to be in effect."

Because Schoen's breach of contract claim predicated on a severance payment does not state a plausible claim, it should be dismissed.

   ii. *Personal Use of HMAI's Corporate Jets*

The second portion of Schoen's breach of contract claim in Count I relates to his rights, under the Employment Agreement, to use HMAI's corporate jets.[7]  The Employment Agreement (which, again, Schoen negotiated for himself while he was HMAI's CEO), (D.E. 20 ¶¶ 13-14), allows Schoen to use HMAI's corporate jets for non-business purposes for up to 150 hours a year during the Employment Agreement's term and for fifteen years thereafter.  (D.E. 20 ¶ 39; D.E.

---

[6] Documents referred to and central to a plaintiff's claim may be considered by the Court as part of a motion to dismiss.  See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002).

[7] Although Schoen alleges in conclusory terms that "HMAI has failed [to] abide by its Aircraft Obligation," (D.E. 20 ¶ 45), Schoen does not allege that HMAI denied him the use of its aircraft altogether.  To the contrary, Schoen's real grievance is that the aircraft HMAI continued to provide for him were **too small**.  Indeed, Schoen bemoans the fact that he was forced to pay out-of-pocket in order to upgrade to larger aircraft.  (D.E. 20 ¶¶ 46-47; D.E. 20 Ex. F.)  To satisfy this self-indulgence, Schoen alleges he spent over $56,000.00.  (D.E. 20 ¶ 47.)

20 Ex. A ¶ 9(d).)  Any unused hours from one year can be rolled over to the next calendar year. (D.E. 20 Ex. A ¶ 9(d).)  Based on this provision, Schoen asserts that HMAI owes him for over 1,300 hours of unused flight time from the past 13 years and demands the payment of an annual stipend (the "Annual Stipend"), a contingency under the Employment Agreement which Schoen asserts would provide him with the annual cost that HMAI would have incurred in order to provide Schoen with a suitable jet from another source.  (D.E. 20 ¶¶ 44, 49.)

Again, Schoen's claim conflicts with the contract's plain language.  Schoen's belief that he is entitled to accumulate an unlimited amount of unused flight hours, for instance, appears to be based on a misreading of the Employment Agreement.  Section 9(d) states that "[a]ny unused hours of personal use for any calendar year shall be carried forward to and added to the Executive's entitlement to hours of personal use <u>for the next calendar year</u>."  (D.E. 20 Ex. A ¶ 9(d)) (emphasis provided).  Schoen mistakenly believes that unused hours can be carried forward without limitation; that is, under Schoen's theory, if for 10 years he never used any personal flight time, Schoen would have 1,500 available hours.  But Schoen overlooks the fact that unused hours carry over only to the *next calendar year.*  (D.E. 20 Ex. A ¶ 9(d).)  The import of this provision is that Schoen can retain up to *one year's* worth of unused hours (150 maximum) for the next year, meaning that the most hours Schoen could have available at any point would be 300.  If Schoen failed to use the rolled-over hours during the next calendar year, however, they expired and could no longer be rolled over.  To the extent Schoen alleges otherwise, his claim conflicts with the contract and cannot stand.

In addition, Schoen has no right to the Annual Stipend.  In asserting his claim, Schoen selectively relies on a sentence at the tail-end of the aircraft-related portion of the Employment Agreement and cites it in isolation, (D.E. 20 ¶ 49), but he reads that sentence far out of its

context.[8]   When read in the proper context, however, Schoen's supposed entitlement to the Annual Stipend falls apart.   Under the Employment Agreement, HMAI dictates whether company-owned aircraft or an alternative will be available, and then the Annual Stipend is available to Schoen only if two prior conditions are met: (1) HMAI elects to provide a fractional ownership arrangement rather than allow Schoen to use HMAI's aircraft; and (2) Schoen declines the fractional ownership arrangement and instead opts to purchase one of HMAI's aircraft.

That is, an honest reading of the relevant provision makes clear that the Annual Stipend is merely a means of effectively reducing the jet's purchase price in the event Schoen chose to buy it.   However, Schoen does not allege that HMAI elected to provide a fractional ownership arrangement in the first place, or that Schoen opted to buy HMAI's aircraft.   Evidently, Schoen seeks to bypass these two necessary preconditions and skip straight to the step that he believes will pay him more money.   But the plain language of the Employment Agreement does not support this view, and Schoen's claim should be dismissed as a result.

---

[8] The relevant provision states:

> **The Company may satisfy its obligations to the Executive under this Paragraph after his termination of employment through a fractional ownership arrangement reasonably satisfactory to the Executive**.   The Executive acknowledges and agrees that NetJet's current fractional ownership program with respect to a Falcon 50 or better aircraft is reasonably satisfactory. Instead of accepting a fractional ownership arrangement, the Executive shall have the right to purchase the Company's Falcon 50 (or its equivalent replacement, as accepted by the Executive) at its then market value.   At the Executive's option, either (i) the purchase price of the aircraft shall be reduced (but not below zero) by the present value of the Executive's right to 15 years' personal use, including any carryover of unused hours accumulated during his employment, or (ii) the Company shall pay to the Executive an annual operating benefit equal to the cost that the Company would have expended from time to time to carry on the fractional ownership program for 15 years.

(D.E. 20 Ex. A ¶ 9(d)(ii)) (emphasis provided).

2.      **COUNT II SHOULD BE DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.**

In its prior motion to dismiss, HMAI demonstrated that Schoen's claim for additional benefits under the SERP was preempted by ERISA.  (D.E. 11 at 3-5.)  Schoen seemingly agreed and elected to re-characterize his SERP breach of contract claim as an ERISA claim for additional benefits.   However, because Schoen continued to fail to exhaust the necessary administrative remedies, this rebranded ERISA claim is still subject to dismissal.

At the outset, it is important to define clearly Schoen's current claim for benefits under the SERP.  His claim does not seek the "lump sum" payment called for under the SERP after a change of control; Schoen acknowledges that this payment already was made.  (D.E. 20 ¶ 82.)  Instead, Schoen's claim seeks *additional* benefits over and above what he received in the lump sum payment.  This distinction – a claim for lump sum benefits as opposed to a claim for additional benefits – is critical in assessing Schoen's compliance with the required administrative process.

An integral part of ERISA's comprehensive legislative scheme is its civil enforcement provision.  29 U.S.C. § 1132.  While this civil enforcement provision does not contain an explicit exhaustion requirement, courts have uniformly held that claimants are required to exhaust administrative procedures before filing suit to obtain benefits or to clarify their rights under ERISA plans.  See Heimeshoff v. Hartford Life & Acc. Ins. Co., 134 S. Ct. 604, 610 (2013) ("The courts of appeals have uniformly required that participants exhaust internal review before bringing a claim for judicial review under § 502(a)(1)(B)."); Herman v. Hartford Life and Acc. Ins. Co., 508 Fed. App'x 923, 926 (11th Cir. 2013) ("The law is clear in this circuit that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court, and that requirement must be pleaded in the complaint."); Counts v. American General Life and

Acc. Ins. Co., 111 F.3d 105, 108 (11th Cir. 1997).  "Congress intended plan fiduciaries, not federal courts, to have primary responsibility for claims processing."  Powell v. A.T. & T. Communications, Inc., 938 F.2d 823, 826 (7th Cir. 1991).

ERISA requires that every benefit plan contain an internal claims review and appeal procedure.  29 U.S.C. § 1133.  In compliance with ERISA and the regulations promulgated thereunder, the SERP contains the following procedures for claims administration and review that expressly require a claimant like Schoen to submit a written claim for benefits:

> Claim for Benefits.  Any claim for benefits under this Plan **shall** be made in writing to the Named Fiduciary.  The claim for benefits shall be reviewed by the Named Fiduciary and the Board. If any part of the claim is denied, the Named Fiduciary shall provide a written notice, within ninety (90) days after the receipt of the claim by the Named Fiduciary, setting forth: (a) the specific reasons for the denial; (b) specific reference to the provision of this Plan or any agreement entered into between the Participant and the Company upon which the denial is based; (c) any additional information the claimant should furnish to perfect the claim; and (d) the steps to be taken if a review of the denial is desired.
>
> If a claim is denied and a review is desired, the Participant (or the Participant's Beneficiary, as the case may be) shall notify the Named Fiduciary in writing within sixty (60) days.  In requesting a review, the Participant or Beneficiary may review this Plan or any documents relating to it and submit any written issues and comments he may feel appropriate.  The Board shall then review the claim and provide a written decision within sixty (60) days.  This decision shall state the specific reasons for the decision and shall include reference to specific provisions of the Plan or any agreement entered into between the Participant and the Company on which the decision is based, as well as such other information required under Section 2560.503-1 of the Labor Regulations.

(D.E. 20 at 101) (emphasis provided).  Requests for information related to benefits, however, do not suffice.  See American Dental Ass'n v. WellPoint Health Networks Inc., 494 Fed. App'x 43, 46 (11th Cir. 2012) (rejecting an attempt to "turn a request for information...into a demand for administrative review") (citing Powell, 938 F.2d at 827).

The amended complaint makes clear that Schoen failed to follow the SERP's mandatory administrative process.  In a transparent attempt to skirt the exhaustion requirement, Schoen

seeks to merge his prior claims for lump sum payment together with his current claim for additional benefits.  Schoen now alleges that he made three "demands," (D.E. 20 ¶¶ 67, 71, 75), but none of these supposed demands are sufficient under the SERP to satisfy the exhaustion requirement.  The first two occurred even before the lump sum payment was made on April 25, 2014, so these demands could not possibly relate to Schoen's current claim for additional benefits beyond what he received as part of that payment.  The third, meanwhile, was not really a demand for benefits at all, but rather was, in Schoen's own words, a "written demand for **additional information**…."  (D.E. 20 ¶ 75) (emphasis provided).  Curiously, unlike his other "demands," Schoen does not identify when or to whom this correspondence was sent.  In any event, requests for information are not sufficient to trigger the ERISA administrative process.  See American Dental, 494 Fed. App'x at 46.

Schoen has not alleged (and in good faith cannot allege) that he submitted a proper claim to HMAI regarding additional benefits in accordance with the SERP.  Instead, he filed this lawsuit.  As a result, Schoen's conclusory allegation that he "exhausted his administrative remedies," (D.E. 20 ¶ 76), is implausible and need not be taken as true.  Because Schoen first should have properly exhausted his administrative remedies by submitting a formal claim for additional benefits to the plan administrator, his ERISA claim should be dismissed pending exhaustion.

Remarkably, although he maintains that he exhausted his administrative remedies, Schoen later takes the contradictory position that exhaustion was either "futile" or "excus[ed]." (D.E. 20 ¶¶ 77-78.)  Schoen cites three reasons why, in his estimation, his failure fully to avail himself of the SERP's administrative process should be overlooked.  Id.  Two of them relate to

the alleged failings of HMAI's response to Schoen's claim for benefits, (D.E. 20 ¶¶ 77(a), 78),[9] which in turn are predicated on Schoen's mistaken assumption (or outright distortion) that he submitted a proper claim for additional benefits in the first place.  As noted above, no such claim was ever made.  The third reason offered by Schoen for his failure to exhaust was that "HMA has failed to detail the manner in which the cash benefit was calculated, to wit, whether or not his spouse's life was included in the calculation, precluding Schoen from any meaningful benefit denial appellate procedure."  (D.E. 20 ¶ 77(b).)  Even assuming for present purposes the truth of this allegation, Schoen neglects to explain how HMAI's alleged failure to provide detail regarding the benefit's calculation somehow precludes meaningful review.  To the contrary, this type of dispute is precisely what the administrative process is meant to resolve.

Establishing that the administrative process would have been futile is a high threshold.  "[B]are allegations of futility are no substitute for the clear and positive showing of futility required before suspending the exhaustion requirement."  Bickley v. Caremark RX, Inc., 461 F.3d 1325, 1330 (11th Cir. 2006).  Here, Schoen's allegations regarding futility come nowhere close to meeting this high threshold.  Schoen offers only speculation regarding the outcome of his claim for additional benefits because the administrative process was never initiated, let alone exhausted.  Indeed, when Schoen previously sought lump-sum benefits, HMAI responded *by paying out benefits*, thereby demonstrating that the administrative process works.  To the extent

---

[9] One of Schoen's arguments is that HMAI failed to comply with the notice requirements of 29 U.S.C. § 1133 by not detailing why it was denying Schoen's claim.  (D.E. 20 ¶ 78.)  Even assuming Schoen submitted a proper claim for additional benefits (and he did not), and even further assuming HMAI denied Schoen's claim for additional benefits (and it was never given the chance), this alleged failure would not excuse exhaustion.  See Counts, 111 F.3d at 108 (noting that "the usual remedy [for alleged violations of section 1133's notice requirement] is not excusal from the exhaustion requirement, but remand to the plan administrator for an out-of-time administrative appeal").

Schoen now believes he is entitled to more, the administrative process should again be the venue to redress his grievance, not this Court.

In sum, Schoen's failure to exhaust his administrative remedies mandates dismissal of his ERISA claim.

## 3.     SCHOEN'S DECLARATORY JUDGMENT CLAIM IS UNNECESSARY.

Count III of Schoen's amended complaint can be dismissed for one simple reason:  there is no present or practical need for a declaratory judgment relating to Schoen's entitlement to insurance benefits – in other words, there is no controversy.  See Ready v. Safeway Rock Co., 24 So. 2d 808, 809 (Fla. 1946) (noting that declaratory judgment actions "should not be permitted to foster frivolous or useless litigation to answer abstract questions" or "to satisfy idle curiosity").  Schoen concedes that, through the date of his amended complaint, he and his spouse have received the insurance benefits called for under the Employment Agreement.  (D.E. 20 ¶ 87.)  Unlike the severance provision discussed above, the health insurance provision is clear on its face that it extends beyond the termination of the Employment Agreement and remains in effect, and HMAI has not argued otherwise.

Moreover, to the extent Schoen previously had any doubt on this point (which is unlikely), HMAI has already expressly committed to providing continued health coverage in accordance with the Employment Agreement.  In correspondence dated March 7, 2014 – which Schoen references in his amended complaint and even purports to quote from (D.E. 20 ¶ 69) – counsel for HMAI stated the following:

> HMA will continue to provide Mr. Schoen and his wife with health care coverage that complies with the February 6, 2007 Amendment to the Employment Agreement.  If Mr. Schoen and his wife are receiving coverage under Medicare, HMA will provide them with Medicare supplement insurance that provides equivalent benefits as HMA's medical plans for its executive officers (after taking into consideration what is actually received from Medicare).

In short, Schoen has received (and continues to receive currently) all the insurance benefits to which he is entitled, and HMAI has already committed to continue providing these benefits in the future.[10]   Seeking a declaratory judgment on this issue is simply a waste of this Court's resources.

**4.      SCHOEN'S QUANTUM MERUIT CLAIM IS LEGALLY IMPROPER.**

In Count IV, Schoen attempts to state a claim for quantum meruit, alleging that he and HMAI entered into an implied-in-fact contract that continued until Schoen's 2013 removal from the board of directors.   Because a quantum meruit claim cannot exist where a plaintiff has alleged the existence of an express contract, Count IV must be dismissed.

"It is well settled that the law will not imply a contract where an express contract exists concerning the same subject matter."   Kovtan v. Frederiksen, 449 So. 2d 1, 1 (Fla. 2d DCA 1984).   The purpose of a quantum meruit claim is to provide an equitable remedy for unjust enrichment where there is no contract between the parties.   See Ocean Commc'ns, Inc. v. Bubeck, 956 So. 2d 1222, 1225 (Fla. 4th DCA 2007).   There is simply no need for the law to imply a contract when an express contract already exists.   See id.   Indeed, "[a]ny proof of an express agreement between the parties as to the compensation to be paid for the services

---

[10] For that reason, Count III likewise does not present the necessary "case or controversy" under Article III of the Constitution.   "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is **a substantial likelihood that he will suffer injury in the future**."   Malowney v. Federal Collection Deposit Group, 193 F.3d 1342, 1346 (11th Cir. 1999), cert. denied, 529 U.S. 1055 (2000) (emphasis provided); see also Odyssey Marine Exploration, Inc. v. Unidentified, Shipwrecked Vessel or Vessels, 512 Fed. App'x 890, 895-96 (11th Cir. 2013) (affirming the dismissal of a declaratory judgment claim because the alleged harm was too contingent or hypothetical).   No such allegations are present in Schoen's amended complaint.   As a result, this Court lacks subject matter jurisdiction over Count III.

rendered would defeat rather than sustain an action based upon quantum meruit….”   Solutec

Corp. v. Young & Lawrence Associates, Inc., 243 So. 2d 605, 606 (Fla. 4th DCA 1971).

Here, Schoen's quantum meruit claim is replete with references to the Employment

Agreement.  He alleges within Count IV, for example, that "[o]n January 2, 2001, during the

continuation of Schoen's position of Chairman of the Board of Directors, **HMA and Schoen**

**entered into a written employment agreement**."  (D.E. 20 ¶ 94) (emphasis provided).  In fact,

Schoen refers to the Employment Agreement in nearly every paragraph of Count IV, even going

so far as to describe and rely on several of its specific provisions.  (See D.E. 20 ¶¶ 96, 104-05,

107, 117).  It is nonsensical – and contrary to black-letter law – to allege the existence of an

implied contract that continued until Schoen's removal while also referring to an express

contract that clearly provided a termination date.  If a contract contains a provision on a certain

subject, such as a termination date, an implied contract on that same subject cannot be

recognized.  See Hoon v. Pate Const. Co., 607 So. 2d 423, 427 (Fla. 4th DCA 1992).  To find

otherwise would "emasculate the effect of that provision."  Id.  Where, as here, a quantum meruit

claim contains allegations concerning the existence of an express contract, the "legal fiction" of

an implied contract cannot be maintained.  Accordingly, dismissal is appropriate.  See Morse,

LLC v. United Wisconsin Life Ins. Co., 356 F. Supp. 2d 1296, 1299 (S.D. Fla. 2005) (holding

that a plaintiff failed to state a cause of action for quantum meruit where the claim included

allegations regarding the existence of an express contract between the parties); Spring Air

Intern., LLC v. R.T.G. Furniture Corp., No. 8:10-CV-1200-T-33TGW, 2010 WL 4117627, at *7

(M.D. Fla. Oct. 19, 2010).

## CONCLUSION

For the reasons set forth above, Defendant Health Management Associates, Inc. respectfully requests that this Court dismiss Schoen's amended complaint and grant all other relief deemed appropriate.

Date: September 22, 2014.                    Respectfully submitted,

**PROSKAUER ROSE LLP**
*Counsel for Health Management Associates, Inc.*
2255 Glades Road, Suite 421 Atrium
Boca Raton, Florida 33431
Telephone:        (561) 241-7400
Facsimile:        (561) 241-7145

*/s/ Andrew Thomson*
Andrew B. Thomson
Florida Bar No. 057672
athomson@proskauer.com

-and-

Peter D. Doyle
(admitted *pro hac vice*)
11 Times Square
New York, NY 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 22, 2014, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system.  I also certify that the foregoing document is being served this day on the below counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

**Thomas B. Garlick, Esq.**
**Shaun M. Garry, Esq.**
GARLICK, HILFIKER & SWIFT LLP
9115 Corsea del Fontana Way, Suite 100
Naples, Florida 34109
Telephone: (239) 597-7088
tomgarlick@garlaw.com
sgarry@garlaw.com
*Counsel for Plaintiff*

                                        */s/ Andrew Thomson*
                                        Andrew B. Thomson