UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WILLIAM J. SCHOEN,

      Plaintiff,

v.                          Case No: 2:14-cv-411-FtM-29CM

HEALTH            MANAGEMENT
ASSOCIATES, INC., a Delaware
corporation,

      Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on review of defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. #27) filed on September 22, 2014. Plaintiff filed a Response in Opposition (Doc. #28) on October 13, 2014. With leave of Court, defendant also filed a Reply (Doc. #29) and plaintiff filed a Sur-Reply (Doc. #33).

## I.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citation omitted). To survive dismissal, the factual allegations must be

"plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011)(citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012)(internal quotation marks and citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

## II.

Count I of the Amended Complaint (Doc. #20) alleges a breach of the Employment Agreement entered into between plaintiff William J. Schoen (plaintiff) and Health Management Associates, Inc. (HMA or defendant).   Count II of the Amended Complaint asserts a wrongful denial of benefits under the Supplemental Executive Retirement Plan (SERP) pursuant to the Employee Retirement Income Security Act (ERISA), § 502(a)(1)(B).   Count III of the Amended Complaint seeks a declaratory judgment with regard to plaintiff's health benefits under the Employment Agreement detailed in Count I as HMA takes the position that the Employment Agreement expired on or about January 1, 2004.   Count IV of the Amended Complaint is alleged in the alternative to Count I, and alleges that plaintiff and HMA entered into an implied in fact contract through the date of his termination on August 25, 2013.   A summary of the background in Counts I and II follows.

### 1. Count I

In February 1983, plaintiff joined the Board of Directors of Hospital Management Associates, Inc. in Fort Myers, Florida. Plaintiff later became the President and Co-CEO, and in this capacity moved Hospital Management Associates, Inc. to Naples, Florida.   In 1986, plaintiff became Chairman of the Board, President and CEO, and took the company public under a new name, Health Management Associates, Inc. (HMA or defendant).   After two

years, plaintiff took HMA back to the status of a private, non-public company.  In 1991, plaintiff once again took HMA public on the NYSE by a second public stock offering and continued in his role as President, CEO, and Chairman of the Board.  During the 1990s, HMA's stock grew exponentially and maintained consistent profitability.

In 2001, at the age of 66, plaintiff stepped down as President and CEO of HMA, but remained Chairman of the Board.  Effective January 2, 2001, plaintiff entered into a written Employment Agreement (Doc. #2-2, Exh. A) with HMA to serve as Chairman of HMA and its Board of Directors.  The Employment Agreement references an annual retirement benefit to plaintiff for life under HMA's Supplemental Executive Retirement Plan (SERP), and up to an additional 10 years if his spouse survives him.  The Employment Agreement further entitles plaintiff and his spouse with coverage under one of HMA's executive medical plans until November 30, 2006, and with Medicare supplemental insurance after that date.  The Employment Agreement contains an expiration date of January 1, 2004.  Plaintiff continued in his position as Chairman until his termination without cause and removal from the Board of Directors on August 15, 2013.  HMA abided by the terms of the Employment Agreement, including paying plaintiff's yearly salary and health care premium payments, providing automobile and club expenses, office and secretarial assistance, and 150 hours of personal use

of HMA's Falcon 50 or equivalent aircraft, until plaintiff's August 15, 2013 termination and removal from the Board of Directors.

On February 6, 2007, the parties signed a First Amendment to Employment Agreement (Doc. #2-4, Exh. C) to amend the "Health Plan" paragraph (paragraph 7), effective November 30, 2006, to continue coverage under one of HMA's executive medical plans, provided however that if plaintiff or his spouse elects Medicare, HMA could provide Medicare supplemental insurance.  No other terms of the Employment Agreement were amended.

In early 2013, Glenview Capital Management Company, LLC, a hedge fund and HMA's largest shareholder, began a campaign to replace HMA's Board of Directors, including plaintiff as Chairman. At the same time, Community Health Systems, Inc., a Delaware corporation (CHS) continued negotiations to acquire HMA.  On or about July 29, 2013, CHS and its wholly owned subsidiary entered into a merger agreement with HMA and affirmed that all material contracts were valid and binding, including plaintiff's Employment Agreement.

On or about August 7, 2013, after learning that Glenview had the requisite number of votes, plaintiff composed a letter to HMA's Board of Directors stating his intent to retire as of September 1, 2013, or when Glenview seated a new Board of Directors, whichever occurred first.  The letter was not accepted and plaintiff continued as Chairman of the Board until he was removed.

On August 15, 2013, plaintiff was notified by Senior Vice President and General Counsel of HMA of the certified results of the vote, and the removal of the Board and plaintiff as Chairman of the Board.  A Form 8-K was filed with the Securities and Exchange Commission detailing the removal and the vote tally.  (Doc. #2-5, Exh. D.)

On January 10, 2014, plaintiff e-mailed Steve Clifton, Senior Vice President and General Counsel of HMA demanding severance pay in compliance with the Employment Agreement.  On January 23, 2014, plaintiff sent a letter to Wayne Smith, Chairman of the Board and CEO of CHS, stating that HMA has owed him $3,239,261 since August 15, 2013.  In the letter, plaintiff states that he was replaced as Chairman without cause and therefore, pursuant to the Employment Agreement, he was entitled to receive a lump-sum payment equal to the gross income paid to the Executive of HMA for each of three calendar years preceding the termination as severance.  Plaintiff also mentions a "gross up" provision for an additional payment of 80% in taxes.  (Doc. #2-6, Ex. E.)  No such severance payment was paid despite plaintiff's demands.

Under the same Employment Agreement, HMA was also obligated to provide plaintiff with personal use of a Falcon 50 Aircraft, or equivalent, for 150 hours of air time per calendar year during his employment, and for 15 years thereafter with any unused hours to be carried over to future years.  HMA abided by the terms of the

Employment Agreement during his employment and until CHS acquired HMA in 2013, but HMA has refused to provide the aircraft at least twice after January 2014. As a result, plaintiff incurred expenses for use of a substitute aircraft and elects the annual operating benefit equal to the cost that HMA would have expended to carry out the fractional ownership program for 15 years. The failure to provide the aircraft benefit constitutes a breach of the Employment Agreement.

### 2. Count II

Effective May 1, 1990, HMA established a Supplemental Executive Retirement Plan (SERP) for executives to receive retirement and survivor benefits. (Doc. #2-8, Exh. G.) Plaintiff's benefits were to be payable for his life with 120 payments guaranteed at a rate of $25,000 a month. (Id. at p. 21.) SERP was amended effective December 13, 1993 (First Amendment, id. at p. 19), effective September 17, 1996 (Second Amendment, id. at p. 28), effective December 5, 2000 (Third Amendment, id. at p. 30), and last amended effective January 1, 2009 (Fourth Amendment and Restatement, id. at p.35), and plaintiff was an eligible participant in the Plan at the time of his termination on August 15, 2013. The Fourth Amendment to the SERP specifically names plaintiff as a participant, and the SERP provides that plaintiff would be entitled to payment from HMA if a change of ownership occurred. A change of ownership did occur after plaintiff's normal

retirement date, and therefore plaintiff was entitled to an immediate single cash sum "Actuarial Equivalent of the Participant's Retirement Benefit" which took into account his spouse's 10 year survivorship annuity right and the obligation to pay plaintiff for any tax impact.  Pursuant to the Fourth Amendment to the SERP, a schedule was established for plaintiff' life and for the life of plaintiff's spouse if she survives him in the amount of $83,333.33 per month, not to exceed 120 payments.

On February 21, 2014, plaintiff made a demand for the single cash sum to HMA's counsel as there was no plan administrator. Counsel responded that it would consider the request but stated nothing further.  Plaintiff sent a second demand letter for $14.4 million and a lump sum after-tax amount, and stated that it was not intended to be a settlement offer and that plaintiff was not requesting a negotiated amount.  On April 25, 2014, HMA, by and through CHS, made a partial payment of $6,104,267.00 to plaintiff despite the demand.  The amount subtracted the present value as of January 27, 2014, in the amount of $9,945,254, and excluded payments made from January 27, 2014 to April 30, 2014, and federal income taxes.  After the payment, plaintiff made another demand for additional information but was denied benefits.  Plaintiff states that he has exhausted his administrative remedies or they would be futile.  Plaintiff argues that HMA materially breached the terms of the SERP and violated ERISA.

**III.**

### Count I - Employment Agreement

Defendant argues that the breach of contract claim is preempted by the Employee Retirement Income Security Act of 1974 (ERISA), and the annual retirement benefit of $1 million in the Employment Agreement for plaintiff's life "relates to" the SERP, a "top-hat plan" under ERISA.  Defendant further argues that no severance is owed because the Employment Agreement expired in 2004, long before the necessary preconditions were in place requiring any severance payment.  In the alternative, defendant argues that any continuing action by the parties under the Employment Agreement, or any amendments of certain provisions, are otherwise barred by the statute of frauds.  Defendant further argues that plaintiff's unused hours towards use of an aircraft only rolled over to the next calendar year, and therefore the almost 1500 hours suggested by plaintiff is without basis.  Defendant also argues that plaintiff is not entitled to an annual stipend because two conditions must be met before it would become available, and the plain language of the Employment Agreement fails to support plaintiff's position.

### Preemption

"Complete preemption is a narrow exception to the well-pleaded complaint rule and exists where the preemptive force of a federal statute is so extraordinary that it converts an ordinary

state law claim into a statutory federal claim." Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1343 (11th Cir. 2009) (citing Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987)). ERISA is a statute which can completely preempt a state law claim, is jurisdictional in nature, and applies where plaintiff asserts a state law claim that seeks relief available under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a). Id. at 1344 (citing Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65-66 (1987)).

Under Section 1132, a participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). This civil enforcement provision "has such 'extraordinary' preemptive power that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d at 1344 (quoting Taylor, 481 U.S. at 65-66).

Whether complete preemption[1] exists under ERISA is governed by Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (2004). Ehlen

---

[1]This is not to be confused with the form of ERISA preemption known as defensive preemption. Jones v. LMR Int'l, Inc., 457 F.3d 1174, 1179 (11th Cir. 2006).

Floor Covering, Inc. v. Lamb, 660 F.3d 1283, 1287 (11th Cir. 2011). "The Davila test asks (1) whether the plaintiff[] could have ever brought [its] claim under ERISA § 502(a) and (2) whether no other legal duty supports the plaintiff['s] claim." Id. at 1287. "Step one of Davila entails two inquiries: first, whether the plaintiff['s] claims fall within the scope of ERISA § 502(a), and second, whether ERISA grants the plaintiff[] standing to bring suit." Id. (citing Conn. State Dental Ass'n, 591 F.3d at 1350). Section 1109 allows recovery against, "'[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter.' 29 U.S.C. § 1109(a)." Ehlen Floor Covering, Inc., 660 F.3d at 1287.

Count I relates to the provisions of the Employment Agreement guaranteeing certain benefits separate and distinct from the benefits provided under the SERP, which is indeed administered by the Board of Directors of HMA. The Court finds that plaintiff's claims with regard to severance for termination without cause and aircraft personal use fall outside the scope of ERISA. Because plaintiff's claim is supported by an independent legal duty under the Employment Agreement terms, the second prong of the Davila test is also not satisfied. The Court finds that Count I is not preempted by ERISA.

*Expiration*

The Employment Agreement was entered into and effective as of January 2, 2001, and sets forth a term as follows:

> The term of employment of the Executive under this Agreement ("Employment Term") shall commence as of the Effective Date and, unless sooner terminated pursuant to Paragraph 10 hereof, shall continue until January 1, 2004 ("Expiration Date").

(Doc. #2-2, Exh. A.)  "It is a question of law as to whether or not the term is one of definite or indefinite duration. It is the plaintiff's burden to prove that the contract is not one terminable at will." Olsen v. Allstate Ins. Co., 759 F. Supp. 782, 786 (M.D. Fla. 1991).  In reviewing an employment contract, the Court applies the "most commonly understood meaning with respect to the subject matter and circumstances of the contract", and according to its plain language.  St. Johns Inv. Mgmt. Co. v. Albaneze, 22 So. 3d 728, 731 (Fla. 1st DCA 2009) (citations omitted).  In giving meaning to a specific provision, the Court must consider it in the context of the entire contract.  Id. at 732.  The Employment Agreement contains a clearly defined duration and expiration date in paragraph 2.

Under Florida law, if an employee continues employment after a definite period of time without a new contract, the presumption is that the employment continues under the same terms of the original contract but without a new written contract.  Barraza v.

Pardo, 985 F. Supp. 2d 1369, 1372 (S.D. Fla. 2013); In re Port-A-Pit, Inc., 138 B.R. 624, 627 (Bankr. M.D. Fla. 1992).   The "presumption may be rebutted by evidence showing a change of the terms of the contract or by proof of facts and circumstances showing that the parties understood that the terms of the old contract were not to apply to the continued service." Sultan v. Jade Winds Constr. Corp., 277 So. 2d 574, 576 (Fla. 3d DCA 1973).

The Employment Agreement was entered into in 2001, and plaintiff served as Chairman of HMA and the Board of Directors until his termination in 2013, well beyond the 3 year term of the Employment Agreement.   Plaintiff alleges that HMA continued to abide by all of the terms of the Employment Agreement during the additional years and through his termination in 2013, including paying his annual salary, allowing use of the aircraft, and automobile and club expenses.   In his Amended Complaint, plaintiff alleges that HMA, by its conduct and actions, confirmed that the Employment Agreement continued beyond January 1, 2004, and both parties adhered to all of the terms of the Employment Agreement. (Doc. #20, ¶¶ 14-21.)   Plaintiff further alleges that HMA amended the Employment Agreement after the Employment Agreement is alleged to have expired.  (Doc. #2-4, Exh. C.)

The Termination Without Cause or After a Change in Control clause of the Employment Agreement provides, "[i]in the event [plaintiff's] employment is terminated by [HMA] without Cause",

which is what plaintiff alleges, HMA shall pay plaintiff his accrued and unpaid salary through plaintiff's termination date, and a lump sum amount equal to the gross income paid to him for the "three completed calendar years immediately preceding the date of such termination." (Doc. #20, ¶ 32; Doc. #2-2, ¶ 11c.) The Termination clause does not specifically limit the severance package to termination without cause within the employment term, and a provision for 3 completed years of service implies that the parties intended to could continue the relationship at-will. The Court finds that the Amended Complaint plausibly presents a claim in Count I, and the motion to dismiss the breach of contract claim will be denied on the basis that the Employment Agreement expired.

*Statute of Frauds*

"The statute of frauds was enacted to prevent fraud and the enforcement of claims based on loose verbal statements made faulty by the lapse of time". LaRue v. Kalex Const. & Dev., Inc., 97 So. 3d 251, 253 (Fla. 3d DCA 2012). See also Yates v. Ball, 132 Fla. 132, 138 (Fla. 1937). "Under the statute of frauds, any agreement that is not to be performed within the space of one year from its making must be reduced to writing in order to be enforceable." Sanz v. R.T. Aerospace Corp., 650 So. 2d 1057, 1060 (Fla. 3d DCA 1995) (citing Fla. Stat. § 725.01 (1991); Tanenbaum v. Biscayne Osteopathic Hosp., Inc., 190 So. 2d 777 (Fla. 1966)). If an oral contract could fully be performed within one year from its

inception, it falls outside the statute of fraud.  Browning v. Poirier, 165 So. 3d 663, 666 (Fla. 2015).

In this case, the Employment Agreement expired after 3 years, with the exception of specific clauses that explicitly survived beyond the 3 year expiration date.  After expiration, the parties continued to operate under the same terms and conditions of the expired written Employment Agreement for an undefined period of time.  "Florida adheres strongly to the principle that an employment contract requires definiteness and certainty in its terms and that an employment contract without a definite term of employment is terminable at the will of either party without cause."  Hesston Corp. v. Roche, 599 So. 2d 148, 151 (Fla. 5th DCA 1992).

Plaintiff does not allege an oral agreement of any kind in the Amended Complaint, but rather plaintiff alleges that the parties continued to operate under the same Employment Agreement as if it renewed.  Plaintiff also does not clearly allege whether the renewal was for life or simply an indefinite period of time. Assuming the statute of frauds applies, it does not bar enforcement of an employment agreement for an indefinite duration, and there are no allegations that plaintiff could *not* have been terminated within the first year of its stated expiration.  LaRue v. Kalex Constr. & Dev., Inc., 97 So. 3d 251, 255 (Fla. 3d DCA 2012) (when an agreement is susceptible to performance within a year, it is

not barred by the statute of frauds); Browning v. Poirier, 165 So. 3d 663, 666 (Fla. 2015) (if an agreement *could* be performed within one year, it falls outside of the statute of frauds).  On the other hand, there are portions of the Employment Agreement that were explicitly for a longer duration than the 3 year employment term, and therefore the Employment Agreement as a whole could not be performed within one year.  The intent of the parties to continue employment annually, indefinitely, or for life is unclear, and therefore the Court cannot make a determination on this defense while the facts remain in dispute.  See, e.g., Hope v. Nat'l Airlines, Inc., 99 So. 2d 244, 246 (Fla. 3d DCA 1957); All Brand Importers, Inc. v. Tampa Crown Distributors, Inc., 864 F.2d 748, 749 (11th Cir. 1989).  The motion will be denied on this basis.

*Aircraft Use and Annual Stipend*

In the Amended Complaint, plaintiff alleges that HMA continued to offer the Falcon 50 or equivalent to plaintiff after his termination on August 15, 2013, and until January 27, 2014, but after CHS acquired HMA, it failed to do so.  Plaintiff alleges that he requested use of an aircraft at least twice after January 27, 2014, and was refused resulting in considerable expenses for use of a substitute aircraft.  (Doc. #20, ¶¶ 45-47.)  The Employment Agreement provides as follows:

> During the period of [plaintiff's] employment
> with [HMA] and for fifteen (15) years
> thereafter, [plaintiff] shall be entitled to

the personal use of [HMA's] Falcon 50 or
equivalent aircraft for 150 hours for each
calendar year (and a pro rata amount for any
portion of a calendar year during such
period), provided [plaintiff's] right to
personal use shall terminate upon [plaintiff's
death or his engaging in competitive activity
by performing services for any direct
competitor of [HMA].

. . .

Any unused hours of personal use for any
calendar year shall be carried forward to and
added to [plaintiff's] entitlement to hours of
personal use for the next calendar year. [HMA]
may satisfy its obligations to [plaintiff]
under this Paragraph after his termination of
employment through a fractional ownership
arrangement reasonably satisfactory to
[plaintiff]. [Plaintiff] acknowledges and
agrees that NetJet's current fractional
ownership program with respect to a Falcon 50
or better aircraft is reasonably satisfactory.
Instead of accepting a fractional ownership
arrangement, [plaintiff] shall have the right
to purchase [HMA's] Falcon 50 (or its
equivalent replacement, as accepted by
[plaintiff]) at its then market value. At
[plaintiff's] option, either (i) the purchase
price of the aircraft shall be reduced (but
no~ below zero) by the present value of
[plaintiff's] right to l5 years personal use,
including any carryover of unused hours
accumulated during his employment, or (ii)
[HMA] shall pay to [plaintiff] an annual
operating benefit equal to the cost that [HMA]
would have expended from time to time to carry
on the fractional ownership program for 15
years. The present value of [plaintiff's]
entitlement to personal use of the aircraft
shall be calculated by using the applicable
federal rate for federal income tax purposes
and by assuming [plaintiff] does not engage in
competitive activity and fully utilizes all
hours of personal use.

(Doc. #2-2, ¶ 9d.)  Plaintiff alleges a breach of the aircraft provision in the Employment Agreement because HMA refused access to an aircraft when it was requested.  Defendant does not argue that the provision was expired or invalid, or that HMA was no longer required to provide aircraft use.  Defendant simply argues that the terms do not provide 1,300 hours of unused flight time and that plaintiff has no right to a stipend unless certain preconditions are met.  As plaintiff has stated a plausible claim for breach of the provision, the motion to dismiss will be denied.

### Count II – SERP Agreement

Defendant seeks to dismiss Count II for failure to exhaust administrative remedies pursuant to the SERP, and as required before pursuing an ERISA claim in federal court.  The motion to dismiss on this basis will be denied.

The SERP does indeed require that any claim for benefits be made in writing, and to the named fiduciary, who is listed as the Secretary of HMA.  (Doc. #2-8, Exh. G, § 2.11.)  The SERP further provides that if any part of a claim is denied, the same named fiduciary shall provide written notice and set forth the steps to be taken if a review of the denial is desired.  (Doc. #2-8, Exh. G, art. V, § 5.2.)  Defendant is also correct that a plaintiff in an ERISA action must exhaust available administrative remedies before suing in federal court, and the failure to take advantage of an available appeal process in compliance with the Plan will be

considered a failure to exhaust administrative remedies barring review. Perrino v. S. Bell Tel. & Tel. Co., 209 F.3d 1309, 1315 (11th Cir. 2000); Watts v. BellSouth Telecomms., Inc., 316 F.3d 1203, 1206 (11th Cir. 2003).

The Amended Complaint contains the following relevant allegations:

> 68. As a result of the acquisition of HMA by CHS on January 27, 2014, there was no known named plan administrator, and thus the First Demand Letter by Schoen was sent directly to HMA's counsel and directed HMA's counsel to "let us know if this is as acceptable as formal notice under such Agreements, and to the extent that it is not, please provide us with the proper names addresses of such parties."

> 69. HMA's responded on March 7, 2014 by indicating that it would "consider" paying a cash single sum for the value of Schoen's benefit, but provided no specific response to his demand pursuant to Section 4.4 (a) for a single lump sum cash benefit payment pursuant to the Change of Ownership.

> 70. Moreover, HMA's response did not state that any future notice or communication under the SERP should be directed to any other address, nor did it identify any other individual to make such demand upon, and therefore waived any requirement to send demand to the named plan administrator.

> . . .

> 73. On April 25, 2014 HMA, by and through CHS, made a partial payment in the amount of $6,104,267.00 to Schoen, despite his demand for $14.7 million under Section 4.4(a) and 4.4(d) of the SERP.

> . . .

76. Despite three (3) demands for benefits, Schoen has been denied benefits under Section 4.4(a) and (b) and has exhausted his administrative remedies with respect the cash payout benefit.

77. Moreover, any further demand or administrative procedure would be futile because:

(a) HMA failed to provide written notice within ninety (90) days in compliance with Section 5.2 of the SERP regarding its denial of benefits; and

(b) HMA has failed to detail the manner in which the cash benefit was calculated, to wit, whether or not his spouse's life was included in the calculation, precluding Schoen from any meaningful benefit denial appellate procedure.

. . . .

(Doc. #20, pp. 11-13.)  The Court maintains discretion to excuse an exhaustion requirement when exhaustion would be futile, the remedy inadequate, or if a claimant is denied "meaningful access" to the review process.  Perrino, 209 F.3d at 1315.  At this stage of the proceedings, the Court finds that plaintiff has adequately pled exhaustion and alternatively asserted futility such that the motion to dismiss must be denied.

### Count III - Declaratory Judgment

Plaintiff alleges that a declaration is required because defendant's position is that the Employment Agreement expired, and therefore plaintiff is uncertain as to his right to medical insurance coverage.  Defendant does not dispute the existence or

applicability of Sections 7 and 8 of the Employment Agreement as confirmed by a letter from defendant's Compensation Committee and based on the First Amendment to Employment Agreement.  (Doc. #2-4, Exh. C.)  In response, plaintiff suggests that judgment should issue in his favor as the issue is undisputed, and defendant filed a reply arguing that there exists no case or controversy justifying the entry of judgment.

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990).  The Court has no authority to grant declaratory relief unless a controversy exists. Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 272 (1941). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. at 273.

In the Amended Complaint, plaintiff seeks a declaration as to the validity of the Employment Agreement as it relates to Sections 7 and 8, as amended, obligating HMA to provide medical insurance to plaintiff and his wife.  Defendant argues that Count III is unnecessary as it agrees that the health benefits survive the expiration of the Employment Agreement by its explicit terms and

by amendment.   The Court finds no controversy, and therefore the motion to dismiss will be granted as to Count III.

### Count IV – Quantum Meruit

Defendant   argues   that   an   implied-in-fact   contract   claim cannot  exist  because  plaintiff  has  alleged  the  existence  of  an express  contract.   Count IV is pled in the alternative to Count I to  the  extent  that  HMA  takes  the  position  that  the  Employment Agreement  expired  in  2004,  despite  the  parties  abiding  by  the  terms of  the  Employment  Agreement  through  2013.

> Under  Florida  law,  "a  contract  implied  in  fact is  one  form  of  an  enforceable  contract;  it  is based  on  a  tacit  promise,  one  that  is  inferred in  whole  or  in  part  from  the  parties'  conduct, not  solely  from  their  words."    [  ]  "The enforceability  of  this  obligation  turns  on  the implied  promise,  not  on  whether  the  defendant has  received  something  of  value.    A  contract implied  in  fact  can  be  enforced  even  where  a defendant  has  received  nothing  of  value."    [ ]  "In  these  contracts,  the  parties  have  in fact  entered  into  an  agreement  but  without sufficient  clarity,  so  a  fact  finder  must examine  and  interpret  the  parties'  conduct  to give  definition  to  their  unspoken  agreement." [  ]

Tara  Prods.,  Inc.  v.  Hollywood  Gadgets,  Inc., No.  09-CV-61436, 2010  WL  1531489,  at  *6  (S.D.  Fla.  Apr.  16,  2010)  (internal citations  omitted).   For  the  reasons  previously  stated,  the  Court finds  that  the  intent  of  the  parties  cannot  be  determined  at  this stage.   The  motion  to  dismiss  will  be  denied.

Accordingly,  it  is  now

**ORDERED:**

Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. #27) is **GRANTED IN PART AND DENIED IN PART**.  The motion is granted as to Count III of the Amended Complaint and otherwise denied.

**DONE AND ORDERED** at Fort Myers, Florida, this __25th__ day of August, 2015.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of record